Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000773
06-APR-2020
07:53 AM

NO. CAAP-18-0000773

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF LI and HDK

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(CASE NOS. FCS-14-1-0092 and FCS-15-1-0072)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Fujise and Leonard, JJ.)

Mother-Appellant (**Mother**) appeals from a September 21, 2018 Order Terminating Parental Rights (**Termination Order**), in which the Family Court of the Second Circuit (**Family Court**)[1] terminated her parental rights to her children, LI and HDK (collectively, the **Children**),[2] appointed the Director of Human Services (**DHS**) to have permanent custody of the Children, and ordered a Permanent Plan as modified, dated July 6, 2018.

Mother argues the Family Court wrongly terminated her parental rights when it: (1) failed to timely hold the

_____

[1] The Honorable Douglas J. Sameshima issued the Termination Order. The Honorable Keith E. Tanaka issued all other orders and presided at all hearings discussed herein.

[2] The Family Court also terminated the parental rights of LI's father and HDK's father.

permanency hearing, in violation of Hawaii Revised Statutes (**HRS**) § 587A-31(g); (2) failed to timely appoint an attorney to represent her in the proceedings; and (3) terminated her parental rights based on insufficient evidence.[3]

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's points of error as follows:

(1) Mother argues that the Family Court violated HRS § 587A-31(g) and Mother's due process rights by failing to conduct a permanency hearing within twelve months of the dates that the Children entered foster care.

HRS § 587A-31(g) (2018) provides:

> If the child has been in foster care under the responsibility of the department for a total of twelve consecutive months or an aggregate of fifteen out of the most recent twenty-two months from the date of entry into foster care, the department shall file a motion to terminate parental rights[.]

LI's date of entry into foster care was January 13, 2015 and HDK's was August 19, 2015. The Children remained in foster care from those dates on. On July 6, 2018, DHS filed the motion to terminate parental rights. DHS was plainly dilatory in carrying out its statutory duties in this case. The record is

---

[3]     Mother fails to state where in the record any of the alleged errors were objected to or the manner in which they were brought to the Family Court's attention, as required by the Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4) and Rules Expediting Child Protective Appeals Rule 11(a)(3)(C). Nevertheless, we review Mother's points of error given the gravity of the matter and the court's policy of "affording litigants the opportunity to have their cases heard on the merits, where possible." Marvin v. Pflueger, 127 Hawai'i 490, 498, 280 P.3d 88, 96 (2012) (citation and internal quotation marks omitted). Counsel for Mother is cautioned to comply with HRAP Rule 28(b)(4) in future appeals.

silent as to why DHS did not file a motion earlier, as required by the statute. However, the record does not reflect that Mother objected to the delay below, and the point is waived. See HRAP Rule 28(b)(4)(iii); In re Doe, 99 Hawaiʻi 522, 537, 57 P.3d 447, 462 (2002) (failure to object amounts to a waiver of claim on appeal).

Even if the point was not waived, it is unclear how Mother was harmed by the delay, which appears to have allowed Mother additional time to come into compliance with the conditions of her service plans. Mother has not shown that the alleged error affected her substantial rights. Therefore, we conclude that any error was harmless. See Hawaiʻi Family Court Rules Rule 61; In re Doe, 99 Hawaiʻi at 534 n.18, 57 P.3d at 459 n.18 (emphasis omitted) ("The appellate courts of this jurisdiction have . . . applied procedural due process protection only where an individual's rights are substantially affected.").

(2) Mother argues that the Family Court abused its discretion by failing to appoint counsel for her until ninety-seven days after LI was placed in foster custody. She cites to In re TM, 131 Hawaiʻi 419, 319 P.3d 338 (2014), to support her argument. In TM, the Hawaiʻi Supreme Court clearly held that "trial courts must appoint counsel for indigent parents upon the granting of a petition to DHS for temporary foster custody of their children." Id. at 436, 319 P.3d at 355 (emphasis added).

Here, at the time of their births, both of the Children were found to have illegal drugs in their systems. Mother initially stipulated to the Family Court taking jurisdiction in

the case of LI, and on June 24, 2014, the Family Court granted DHS's Petition for Family Supervision of Mother and LI. On January 9, 2015, DHS filed a Safe Family Home Report, recommending that the Family Court award DHS foster custody of LI. On January 13, 2015, the Family Court held a periodic review hearing. After the Family Court announced it was awarding foster custody to the State, while the court was talking to Mother and before all issues had been addressed, Mother abruptly left the courtroom. After Mother left, DHS Social Worker Christina Satyo Dosland remarked that Mother needed an attorney, and the Family Court responded "if someone can talk to [Mother] and . . . just give her the application, maybe we can deal with it when we come back April 14th [2015]."

At that point in the proceedings, under the supreme court's directive in TM, the Family Court was required to appoint counsel for Mother if she was indigent. Suggesting that the court would "maybe" deal with the appointment of counsel three months later was inadequate. While Mother's departure from the courtroom was unhelpful, it is clear from the record that Mother was under a great deal of stress, had very recently been homeless, and was having significant difficulty coping with the courtroom procedures.[4] While each case has its specific circumstances, the supreme court's determination that indigent

---

[4]     The DHS Social Worker commented to the court:   "[Mother] needs therapy so badly."

parents have a due process right to have counsel appointed at this juncture is clear and well-founded.

On January 21, 2015, the Family Court entered a written order revoking family supervision and granting DHS foster custody of LI, effective January 13, 2015.

On April 14, 2015, the Family Court held a periodic review hearing, at which Guardian Ad Litem John Baker (**Baker**) explained he had submitted Mother's Application for Court-Appointed Counsel for filing[5] in the Family Court, on her behalf, but Mother needed to answer a question about the application. A message was left on Mother's voicemail, but she had not responded.

On April 20, 2015, the Family Court filed an Amended Order Appointing Counsel, appointing Renata Foster-Au to represent Mother, effective April 14, 2015. On the same date, Mother's Application for Court-Appointed Counsel, which she signed on April 6, 2015, was filed in the Family Court.

Subsequently, in June of 2015, HDK was born and DHS assumed temporary foster custody of HDK.

Mother was divested of custody of LI when the Family Court awarded DHS foster custody, effective January 13, 2015. Therefore, as stated above, the Family Court was required to appoint counsel for Mother at that time if she was indigent. See

---

[5] Baker stated that he filed the application, but it appears he only submitted it for filing because the application was not filed until April 20, 2015.

TM, 131 Hawaiʻi at 436, 319 P.3d at 355. The Family Court did not appoint Mother's counsel until after the hearing on April 14, 2015. At that hearing, other than continuing foster care, the court took no further action and continued the return and periodic review hearing to May 5, 2015, so that Mother could be represented by counsel.

On this appeal, Mother asks this court to enforce the "bright-line rule" established in TM, does not identify any prejudice or harm to Mother, and submits that violation of the supreme court's holding nevertheless requires reversal and remand. While the Family Court has been directed, in every case, to appoint counsel for an indigent parent upon the granting of a petition for foster custody, under the circumstances of this case, we are reluctant to vacate the Termination Order on this ground. The delay of three months was impermissible, but it appears that Mother's early departure from the courtroom on January 13, 2015, her failure to provide DHS a specific street address for her new residence, and her inconsistent responses to voicemail messages and instructions for completing the paperwork necessary to establish her indigency all contributed greatly to the delay. Mother has declined to identify any prejudice and none is apparent from the record. Counsel was appointed before any further action was taken and Mother was thereafter represented at all further proceedings. It was not until literally years later, as Mother has pointed out, that DHS moved forward with its petition to terminate Mother's parental rights.

While not condoning the delay in the appointment of counsel in this case, on the record before us, we decline to vacate the Termination Order on this ground.

(3) Mother argues that there was insufficient evidence to support the Termination Order. She maintains that the State presented no evidence that she harmed Children, according to the definition of "harm" in HRS § 587A-4, and that the Family Court accorded too much weight to DHS's assessments and too little to her progress in court-ordered services.

Although "initial and any subsequent reports of harm and threatened harm to the child" are factors the Family Court must consider when determining whether to terminate parental rights, a finding of harm is not required. See HRS § 587A-7 (2018) and HRS § 587A-33 (2018). Here, the Family Court found that "[a]t the time of their respective births, both [C]hildren] were found to have illegal drugs in their systems," and the record reflects that the drug was methamphetamine. Included in the definition of "harm" set forth in HRS § 587A-4 (2018), is "damage or injury to a child's physical or psychological health or welfare, where . . . [t]he child is provided with dangerous . . . drugs as defined in section 712-1240[.]" According to HRS § 712-1240 (2014), a substance specified as a "Schedule II substance" by HRS chapter 329 is a "dangerous drug." HRS § 329-16(e)(2) (2015) includes in Schedule II any substance containing methamphetamine.

7

The appellate courts have consistently upheld the termination of parental rights based in part on a parent's failure to address his or her substance abuse problem. See, e.g., In re BP, 112 Hawai'i 309, 312, 145 P.3d 852, 855 (App. 2006); In re P Children, CAAP-16-0000696, 2017 WL 2829537, *3 (Haw. App. June 29, 2017) (SDO); In re KC No. 30257, 2010 WL 5409433, *2 (Haw. App. Dec. 30, 2010) (SDO).

Mother argues that the Family Court improperly weighed the evidence. However, "[t]he appellate courts will give due deference to the right of the trier of fact to determine credibility, weigh the evidence, and draw reasonable inferences from the evidence adduced." See In re Doe, 107 Hawai'i 12, 19, 108 P.3d 966, 973 (2005) (citation and internal quotation marks omitted).

The Family Court's written findings provide, in relevant part:

> 4. The [DHS] began providing services for the Mother of both [Children] in 2015. At that time, both minors were removed from the Mother's care and placed in foster care due to the Mother's inability to care for them and because of ongoing substance abuse.
>
> 5. The Mother has been provided numerous service plans by [DHS] and over the years she has been provided services. The service plans have consistently contained a component regarding substance abuse treatment, as part of each plan. Mother has consistently failed to comply with the conditions of the service plans.
>
> 6. Evidence was presented at the hearing that the Mother, currently on probation with the Second Circuit Court, State of Hawaii for criminal violations, admitted to being in violation of her conditions of probation.
>
> 7. On July 24, 2018, at the hearing on the State's Motion to Revoke Probation, the Mother admitted to drug use. Said violation was for a finding of methamphetamine in the Mother's blood. Substance abuse has been, and remains an

8

ongoing problem for the Mother during the lifetime of [Children].

     8.  The Mother was sentenced to jail for her violation.

     9.  The Mother presented evidence of recent, short term employment.

     10.  The Mother presented evidence of various residences where she has resided in the last year.

Mother does not challenge any of the Family Court's FOFs and, therefore, the court is bound by them. See Poe v. Hawai'i Labor Relations Bd., 97 Hawai'i 528, 536, 40 P.3d 930, 938 (2002) (citations omitted); In re BP, 112 Hawai'i at 312, 145 P.3d at 855.

Based on the record and the Family Court's unchallenged findings, we conclude that there was sufficient evidence to support the Family Court's conclusion that Mother was unable to provide a safe family home, even with the assistance of a service plan, and she would not become willing or able to do so in the reasonably foreseeable future.

For these reasons, the Family Court's September 21, 2018 Termination Order is affirmed.

DATED: Honolulu, Hawai'i, April 6, 2020.

On the briefs:

Michael A. Glenn,
for Mother-Appellant.

Adriel C.S. Menor,
Ian T. Tsuda,
Julio C. Herrera,
Deputy Attorneys General,
for Petitioner-Appellee
 Department of Human Services.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Alexa D.M. Fujise
Associate Judge

/s/ Katherine G. Leonard
Associate Judge